IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMY ELIZABETH BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NUMBER 1:11-cv-3606-TCB |
| PUBLIX SUPER MARKETS, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

# O R D E R

This case is before the Court on Defendants' motion for summary judgment [25].

## I.    Background

On October 20, 2011, Amy Barnes filed this *pro se* action against her former employer, Publix Super Markets, Inc., and two of her former supervisors, Thomas Sayers and Kevin Kid.  Barnes alleges that she suffers from several disabilities and that Defendants violated the Americans with Disabilities Act ("ADA") by failing to make reasonable accommodations and

by discriminating against her because of her disabilities.  She also brings a claim for "interference to economic relations," as well as a claim under the Fair Labor Standards Act ("FLSA").

On August 27, 2012, Defendants filed their motion for summary judgment.  On September 20, Barnes filed her response to the motion; however, she failed to include a response to Defendants' statement of undisputed facts in accordance with Local Rule 56.1(B)(1)(2)(a).

Barnes attached to her response brief a transcript of unemployment proceedings held before the Georgia Department of Labor, and she argues that this transcript establishes disputed issues of material fact sufficient to defeat summary judgment.  However, she did not include a statement of additional material facts in accordance with Local Rule 56.1(B)(1)(2)(a). Nor did she cite specific portions of the transcript in her response brief.

Defendants argue that the Court should deem all of their facts admitted as a result of Barnes's failure to comply with Local Rule 56.1. They further argue that the Court should refuse to consider the Georgia Department of Labor transcript because it is inadmissible.  However, in light of Barnes's *pro se* status, the Court will exercise its discretion to consider the entire record in deciding this motion.  *See* Fed. R. Civ. P.

2

56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  Moreover, the Court need not decide the admissibility of the Department of Labor transcript because, as discussed below, the transcript does not support Barnes's claims.  The relevant facts will be set forth in the Court's discussion below.

## II.  Discussion

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.*  Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)).  If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden.  *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991).  The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324).  The second is to show that "there is an absence of evidence to support the nonmoving party's case."  *Id.* (quoting *Celotex*, 477 U.S. at 323).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial.  *Id.*  At this point, the nonmoving party must "'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

A.   ADA Claims

Barnes brings claims under the ADA based on Defendants' alleged failure to reasonably accommodate her disability, disparate treatment of her because of her disability, and retaliation against her because of her

protected expression.  Defendants argue that, as an initial matter, Kidd and Sayers are entitled to summary judgment on these claims because there is no individual liability under the ADA.  Defendants further argue that they are all entitled to summary judgment on these claims because  Barnes has failed to raise a genuine issue of fact as to the essential elements.

### 1.   Individual Liability

Defendants correctly note that "only the employer, not individual employees, can be liable under the Americans with Disabilities Act." *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996).  Barnes's only response to this argument is that it "assumes that the corporate veil cannot be pierced through proof of qualifying actions that convert a corporate Agent into a liable individual."  However, there are no facts in the record that would support piercing the corporate veil or holding Kidd or Sayers liable on a theory of alter-ego liability.  Therefore, Kidd and Sayers are entitled to summary judgment on Barnes's ADA claims, and the Court will proceed to address the merits of those claims only with respect to Publix.

### 2.   Discrimination Claims

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "Thus, the ADA prohibits 'a broad variety of adverse employment actions, whenever those actions are taken for a prohibited reason.'"  *Doe v. DeKalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1447 (11th Cir. 1998).

The ADA further provides that the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.  42 U.S.C. § 12112(b)(5)(A).  In other words, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA . . . ."  *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1262 (11th Cir. 2007).

In her complaint, Barnes alleges both disparate treatment and the failure to provide reasonable accommodations.  Thus, the Court construes her complaint as bringing two different types of ADA discrimination claims and will analyze those claims separately.

### a.   Disparate Treatment

ADA discrimination cases based on disparate treatment are subject to the same burden-shifting framework as Title VII discrimination cases.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (2000).

> Under this familiar framework, a plaintiff must first establish a prima facie case of discrimination.  The burden of production then shifts to the defendant who must articulate a legitimate non-discriminatory reason for the challenged employment decision.  And finally, the plaintiff then bears the ultimate burden of persuasion that the defendant's proffered reason is a pretext for discrimination.

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999). To establish a prima facie case, the plaintiff must show that (1) she has a disability, (2) she is a qualified individual, and (3) she suffered an adverse employment action because of her disability.  *See Doe*, 145 F.3d at 1445.

In their motion for summary judgment, Defendants assume without conceding that Barnes is a qualified individual with a disability.  However,

they contend that most of the actions Barnes complains of did not amount to adverse employment actions, and those actions that could be considered adverse employment actions were not taken because of her disability.  They further argue that even if Barnes has established a prima facie case, they have proffered legitimate, non-discriminatory reasons for each potential adverse employment action, and she has failed to produce any evidence that those reasons are a pretext for disability discrimination.

Barnes's complaint alleges that Publix "treated [her] differently because of her disability," but it does not specify the ways in which she was treated differently.  In her response to Defendants' motion for summary judgment, Barnes identifies the following actions by Publix that could constitute adverse employment actions: (1) her reassignment from a customer service position to a cashier position, (2) micromanagement of her job performance, (3) her suspension, (4) the blocking of her request to transfer to a different Publix store, and (5) her resignation, which she characterizes as a constructive termination.

For purposes of their motion, Defendants assume without conceding that Barnes's reassignment and suspension were adverse employment actions.  Thus, the Court will do the same.  However, Defendants contend

that none of the other actions Barnes complains of constituted adverse employment actions. The Court agrees.

"An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). Other than her reassignment and suspension, Barnes fails to identify any actions that meet this threshold. First, even if she was managed more closely than other employees because of her disability, and even if that scrutiny resulted in informal discipline, that does not constitute adverse employment action unless it had a tangible effect on her employment, such as "a loss of pay or benefits or further discipline." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1240 (11th Cir. 2001). To the extent Barnes contends that this closer scrutiny of her work resulted in her reassignment or suspension, the Court will consider it in that context. However, standing alone, it does not constitute adverse employment action. *See Lucas*, 257 F.3d at 1261 ("Negative performance evaluations, standing alone, do not constitute adverse employment action . . . .").

Barnes also alleges that Defendants initially blocked her request to transfer to a different Publix store and that once the transfer was approved,

they failed to inform her of it.  But even assuming Defendants committed those actions,[1] they do not amount to adverse employment actions because Barnes does not allege that the transfer would have resulted in a tangible benefit to the terms of her employment, such as greater pay, benefits or prestige.  *See Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1033 (11th Cir. 2008) (denial of transfer request not adverse employment action where there would have been no increase in wage, benefits or prestige).

Finally, Barnes's resignation was not an adverse employment action because it did not amount to a constructive discharge.  In order to show a constructive discharge, Barnes must "demonstrate that working conditions were so intolerable that a reasonable person in her position would have been compelled to resign."  *Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)) (internal quotation marks omitted).

Barnes contends that her lack of income due to her suspension, as well as her deteriorating working conditions, led her with no choice but to

---

[1] Barnes argues that in the Georgia Department of Labor proceeding, Sayers admitted to blocking her transfer.  This is a misconstruction of Sayers's testimony.  However, it makes no difference because even if Sayers blocked her transfer, that would not support her ADA discrimination claim.

resign.  However, she was scheduled to return to work on the day of her resignation, and although she had been disciplined on several occasions, including her suspension, those disciplinary actions did not make her working conditions "so intolerable that a reasonable person in her position would have been compelled to resign."  *Id.*  In fact, her letter of resignation defies her position that her working conditions were intolerable.  In the letter Barnes stated, "I will resign from Publix Supermarkets on good terms and wish to thank Tom Sayers, Kevin Kidd, and Pattie Simmons for their excellent advice [and] coaching."  She further stated, "I wish all of my friends [and] family at Publix the best of luck!"

Moreover, "[a] constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation."  *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996).  Barnes does not allege that she complained that her working conditions were intolerable, or that she gave Publix an opportunity to remedy those conditions.  Instead, she resigned as soon as she returned from her

suspension.  In short, Barnes did not undergo a constructive discharge; therefore, her resignation was not an adverse employment action.[2]

Turning to the two actions that actually may constitute adverse employment actions, Barnes's reassignment and suspension, Barnes has failed to raise a disputed issue of fact as to whether those actions were taken because of her disability; therefore, she has failed to establish a prima facie case of discrimination under the ADA.  Although Defendants were apparently aware of Barnes's disability at the time of these actions, Barnes has failed to identify, and the Court has not found, any record evidence showing that the adverse actions "occurred under circumstances which raised a reasonable inference that the disability . . . was a determining factor in [the employer's] decision."  *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).  Therefore, Barnes has failed to establish a prima facie case.

---

[2] Barnes contends that her resignation was found to be a constructive discharge in her unemployment proceedings before the Georgia Department of Labor.  However, even if such a finding was made, it would have no bearing on this case.  O.C.G.A. § 34-8-122(b) ("Any finding of fact or law, judgment, determination, conclusion, or final order made by an adjudicator, examiner, hearing officer, board of review, or any other person acting under the authority of the Commissioner with respect to this chapter shall not be admissible, binding, or conclusive in any separate or subsequent action or proceeding between a person and such person's present or previous employer brought before any court of this state or the United States or before any local, state, or federal administrative agency, regardless of whether the prior action was between the same or related parties or involved the same or similar facts.").

Moreover, even assuming that Barnes could establish a prima facie case, Defendants have proffered legitimate, non-discriminatory reasons for each adverse action, and Barnes has failed to show that those reasons were pretextual.  Prior to her reassignment from a customer service position to a cashier position, Barnes was disciplined on several occasions for making inappropriate comments to customers and co-workers.  She does not dispute that customers and co-workers complained about her inappropriate comments, and the Court finds that those complaints were a legitimate, non-discriminatory reason for her reassignment.  Moreover, she has failed to raise any dispute as to whether Defendants' proffered reason is pretextual.  Indeed, she admitted during her deposition that Pattie Simmons, the customer service manager who recommended her reassignment, always treated her fairly.  Barnes Dep. 48, July 23, 2012.

Shortly after her reassignment in October 2010, Barnes parked her car in the Publix parking lot with a large sign in her rear window stating that Bank of America owed her money, and a customer complained about the sign.  A few days later, a customer complained that Barnes had criticized her for buying Capri Sun drinks for her family.  A few days after that, an associate reported that Barnes was complaining to customers at the

cash register that Bank of America owed her money.  Publix contends that
Sayers placed Barnes on suspension because of these inappropriate
interactions with customers.  Barnes does not dispute that these complaints
were made, and she has failed to raise any dispute as to whether
Defendants' proffered reasons for suspending her were pretextual.

In sum, Barnes has failed to establish a prima facie case of ADA
discrimination because she has failed to show that she was subjected to any
adverse employment actions *because of* her disability.  Moreover, even if
she could establish a prima facie case, Defendants have satisfied their
burden of articulating legitimate, non-discriminatory reasons for each
possible adverse employment action, and Barnes has failed to raise any
factual dispute as to whether those reasons are pretextual.  Consequently,
Publix is entitled to summary judgment on Barnes's ADA discrimination
claim.

### b.    Failure to Accommodate

Failure-to-accommodate claims are not subject to the same burden-
shifting framework as disparate-treatment claims.  *See Holly*, 492 F.3d at
1362.  "[A]n employer's failure to reasonably accommodate a disabled

individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Id.* There is no additional burden on the plaintiff to show disparate treatment, or on the defendant to proffer legitimate, non-discriminatory reasons for its actions, or on the plaintiff to show that those reasons were pretextual. *Id.*

In *Holly*, the Eleventh Circuit stated that a plaintiff bringing a failure-to-accommodate claim must show that the failure to provide a reasonable accommodation led to an adverse employment action that was, in effect, because of her disability. *Id.* at 1263 n.17. However, this statement was dicta, and such a requirement seems inconsistent with the statutory text and *Holly*'s own conclusion that "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA." *Id.* at 1362. Moreover, the Court has not found an Eleventh Circuit case that was actually decided on this ground, and other circuits take a contrary position.

The Seventh Circuit, for example, has held that an ADA plaintiff may prevail by showing that "the employer took an adverse job action against her because of her disability or failed to make a reasonable

15

accommodation." *Feldman v. Olin Corp.*, 692 F.3d 748, 752 (7th Cir. 2012)

(quoting *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)).

Similarly, the Third Circuit has held that "the failure to reasonably

accommodate a disabled and qualified employee constitutes an adverse

employment action for purposes of the ADA." *Turner v. Hershey*

*Chocolate USA*, 440 F.3d 604, 611 n.4 (3d Cir. 2006). With no binding

authority in the Eleventh Circuit, the Court will follow this line of cases.

Defendants contend that they are entitled to summary judgment on

Barnes's failure-to-accommodate claim because she was provided all of the

reasonable accommodations she requested. However, they do not dispute

that on one occasion Barnes was not informed of a hard closing that was

announced over the public address system.[3]

The Court expresses no opinion as to whether Barnes actually

requested an accommodation with respect to the public address system,

whether the requested accommodation was reasonable and necessary to

---

[3] Barnes argues that in the Georgia Department of Labor proceeding, Kidd admitted that Publix provided no reasonable accommodations. However, in her response to Defendants' motion for summary judgment, she admits that Publix met all of her requests for reasonable accommodations outside of this one incident. Because there is adequate evidence in the form of Barnes's deposition testimony that this incident occurred, the Court need not rely on the Department of Labor transcript or determine its admissibility.

perform an essential function of her job, or whether it would have imposed an undue burden on Publix, because Defendants do not argue any of those issues in their motion.  However, to the extent Barnes's failure-to-accommodate claim is based on this one incident, Defendants have failed to show that they are entitled to summary judgment.  Therefore, Barnes's failure-to-accommodate claim against Publix will be allowed to proceed.

### 3.    Retaliation Claim

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  This provision creates a cause of action for retaliation, and retaliation claims brought under the ADA are analyzed under the same framework as those brought under Title VII.  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  Thus, to establish a prima facie case of retaliation under the ADA, "a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action."  *Id.*

Barnes argues that she engaged in statutorily protected expression by complaining about her inability to hear the hard-closing announcement over the public address system.  She further argues that after she raised this issue, she was subjected to several adverse actions, including reassignment, suspension, and micromanagement.

Even assuming that Barnes engaged in statutorily protected expression and that she was subjected to adverse employment actions, she has failed to make out a prima facie case of retaliation because she has not shown a causal connection between her expression and those actions.  At a minimum, Barnes must show that the relevant decision-makers were aware of her protected conduct.  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999).  However, the only record evidence that Barnes complained to anyone in particular about her inability to hear the hard-closing announcement is her testimony that she "may have discussed the hard closings with [Steve McConnell]."  Barnes Dep. 235:10-15.  And there is no evidence that McConnell was a decision-maker with respect to any of the adverse actions taken against Barnes, nor is there any evidence that the

actual decision-makers were aware of Barnes's complaint to McConnell.[4]

Therefore, Barnes has failed to make out a prima facie case of retaliation

under the ADA.

Moreover, even assuming Barnes could make out a prima facie case,

Defendants would be entitled to summary judgment on her retaliation

claim.  Under the ADA, retaliation claims are subject to the same burden-

shifting framework as discrimination claims.  *See Stewart*, 117 F.3d at 1287.

"Once a *prima facie* case is established, the burden then shifts to the

defendant employer to come forward with legitimate non-discriminatory

reasons for its actions that negate the inference of retaliation."  *Id.*  "The

plaintiff must then demonstrate that [she] will be able to establish at trial

that the employer's proffered non-discriminatory reasons are a pretextual

ruse designed to mask retaliation."  *Id.*  As discussed above, Defendants

have presented legitimate, non-discriminatory reasons for all of the adverse

actions taken against Barnes, and there is no evidence that those proffered

reasons are pretextual.  Consequently, Publix will be granted summary

judgment on Barnes's ADA retaliation claim.

---

[4] Kidd and Sayers are the only management personnel Barnes believes may have retaliated against her.  Barnes Dep. 261-63.  However, there is no evidence that Barnes complained to Kidd or Sayers about the hard-closing announcement, or that Kidd or Sayers were aware of her complaints to other employees.

B.    Tortious Interference Claim

Barnes also brings a claim for "interference to economic relations," which is in large part a rehashing of her ADA retaliation claim.  However, to the extent she seeks to bring a claim for tortious interference with economic relations under Georgia law, Defendants are entitled to summary judgment on that claim.  To prevail, Barnes would have to show that "the defendant (1) acted improperly and without privilege, (2) purposely and with malice and intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with [her], and (4) for which [she] suffered some financial injury."  *Project Control Servs., Inc. v. Reynolds*, 545 S.E.2d 593, 598 (Ga. Ct. App. 2001).

Barnes argues that she can prevail on this claim because Defendants initially blocked her request to transfer to a different store and then failed to inform her after the request was approved.  However, even accepting that as true, Defendants did not induce a third party to not enter into a business relationship with her.  First, there was no third party involved, as Barnes merely sought a transfer to another Publix store.  And second, the only thing that kept Barnes from transferring was her own decision to resign.

Consequently, Defendants will be granted summary judgment on Barnes's tortious interference claim.

### C.    FLSA Claim

Barnes also brings a claim under the Fair Labor Standards Act ("FLSA"), under which she alleges that she "was made to suffer punitive actions for her exercise of her rights to discuss job conditions and working environments with others present at the work place, and to object to ill treatment and discrimination from her management team at Publix Supermarkets."  This seems to be little more than a rehashing of her ADA retaliation claim.  The FLSA does not address such issues; rather, it allows employees to recover unpaid wages if their employer violates its minimum-wage or overtime provisions.  29 U.S.C. § 216(b).  However, to the extent Barnes seeks to recover unpaid wages under the FLSA, Defendants are entitled to summary judgment on that claim.

Elsewhere in her complaint, Barnes alleges that she "was instructed by Thomas Sayers that unpaid behavior off-the-clock is a condition of employment."  During her deposition, she clarified that this allegation refers to "the requirement as handed down directly by Tom Sayers that I refrain from saying any controversial or upsetting things that could offend

anyone, and I mean in my own personal car, in my house, outside, and way from Publix." Barnes Dep. 295-96.  In her response to Defendants' motion for summary judgment, she implies that this is the allegation upon which her FLSA claim is based.  Specifically, she argues that she "is not owned by Publix and is not paid for 24-hour conduct in a manner that would fulfill the requirements of minimum wage for 24 hours and / or OT, so the issue of a FLSA claim should rest with a Jury."

Under the FLSA, work is construed "to mean all activities 'controlled or required by the employer and pursued necessarily and primarily for the benefit of [the] employer and his business.'"  *Dade Cnty., Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).  "Whether an off-duty activity is conducted predominately for the benefit of the employer depends on the degree to which an employee's freedom is undermined by the work-related activity."  *Id.*  "[A]n employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA."  *Id.* (quoting *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 810 (11th Cir. 1992)).  For example, the Eleventh Circuit has held that police officers' meal breaks were not compensable because the officers were "free to spend their

meal breaks in any way they wish so long as they remain in uniform, leave their radios on, and do not leave the jurisdiction." *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1347 (11th Cir. 1994).

In this case, there is insufficient evidence for a reasonable jury to conclude that Barnes's off-the-clock time was so severely restricted that it was spent predominantly for the benefit of Publix.  Even if Publix had a code of conduct that applied to Barnes at all times, she was otherwise free to spend her off-the-clock time in any way she chose.  Therefore, that time was not compensable under the FLSA, and Defendants are entitled to summary judgment on Barnes's FLSA claim.

III.   Conclusion

Defendants' motion for summary judgment [25] is GRANTED IN PART AND DENIED IN PART.

The motion [25] is GRANTED with respect to all of Plaintiff's claims against Defendants Thomas Sayers and Kevin Kidd.  Pursuant to Federal Rule of Civil Procedure 54(b), the Court finds no just reason for delay. Therefore, the Clerk is DIRECTED to enter final judgment in favor of Sayers and Kidd on all of Plaintiff's claims.

The motion [25] is DENIED with respect to Plaintiff's failure-to-accommodate claim against Defendant Publix Super Markets, Inc., but GRANTED with respect to all of Plaintiff's other claims against Publix. Pursuant to Local Rule 16.4, the Publix and Barnes's proposed consolidated pretrial order is due thirty days after the date of this order.

IT IS SO ORDERED this 22nd day of March, 2013.

_____
Timothy C. Batten, Sr.
United States District Judge